## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### Bankruptcy Judge Sid Brooks

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case No. |
| MELVIN EUGENE SHARP, | ) | 12-21611-SBB |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Last four digits of SS#: 6617, | ) | |

**APPEARANCES:**

DOUGLAS E. LARSON
422 White Avenue, Suite 323
Grand Junction, CO 81501
CHAPTER 7 TRUSTEE, *PRO SE*

MICHAEL JUDE
JudeLaw, LLC
6565 East Evans Avenue
Denver, CO 80224
COUNSEL FOR DEBTOR

### ORDER REGARDING OBJECTION TO EXEMPTIONS AND NOTICE OF EVIDENTIARY HEARING

THIS MATTER came before the Court on November 6, 2012, for a non-evidentiary hearing and oral argument related to the Objection to Exemptions filed by Douglas E. Larson, Chapter 7 Trustee ("Trustee") on August 20, 2012,[1] and the Response thereto filed by Melvin Eugene Sharp, *pro se* ("Debtor"), on September 7, 2012.[2] Following a November 6, 2012, hearing, the Court ordered the parties to submit briefs on the legal issues. Both the Trustee and Debtor's counsel each filed a brief on November 26, 2012.[3] The Court, having reviewed the pleadings, the case file, and applicable law, makes the following findings of fact, conclusions of law, and enters the following Order.

I.    **Summary**

The Debtor's principal occupation for the past twenty-seven (27) years has been as an employee of a grocery story in southwestern Colorado. In December of 2009, the Debtor decided to become an entrepreneur and start a hunting and fishing guide business.

On June 1, 2012, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Debtor stated in his Bankruptcy Schedules that his occupations included both his hunting and fishing guide business and his employment at the grocery store. Moreover, the Debtor claimed his firearms, sporting goods, ATV, and boats (as specified in section III herein) were tools of the

---

[1]    Docket #36.

[2]    Docket #41.

[3]    Docket #57 and 58.

trade as he used them in his guide business.

The Trustee contends that, because the Debtor does not make a profit from his three-plus-year old guide business, the business does not constitute a "gainful occupation" and, therefore, he may not take the "tools of trade" exemption under COLO. REV. STAT. § 13-54-102(1)(I) (also referred to herein as "Tools of Trade Exemption"). This Court concludes that, although the Debtor does not make a profit at this time, his guide business may be considered a "gainful occupation," which may warrant the use of the Tools of Trade Exemption. Nevertheless, the Court concludes that this Court must conduct an evidentiary hearing to consider the factors addressed herein, which may, or may not, validate and otherwise support a finding and a conclusion of "gainful occupation" and, thus, the appropriateness of the Tools of Trade Exemption.

## II.   Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), because this matter concerns the administration of the estate and allowance or disallowance of exemptions from the estate.

## III.   Background

At the non-evidentiary hearing on November 6, 2012, the parties acknowledge that the facts were, for the most part, not contested. The following background is based on the facts as presented to the Court.

On June 1, 2012, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. The Debtor indicates in his Bankruptcy Schedules and Statement of Financial Affairs that he is employed as a Customer Relations Manager at Kroger Company in a City Market store. He also states in his Schedules and Statement of Financial Affairs that he owns and is employed by Aspen Place Outfitters, LLC ("Aspen Place"), a hunting and fishing guide business.

At the time of filing, Debtor stated in his Statement of Financial Affairs that Aspen Place had lost $8,868.00 in 2011, and $2,711.82 in 2012 year-to-date.[4] Meanwhile, Debtor had income of $35,511.00 from Kroger Company in 2011 and $12,611.17 year to date in 2012.

The Debtor filed a Schedule B and a respective Schedule C reflecting certain assets and exemptions related to Aspen Place. The items at issue, which were included in Schedule B and related to the business, and claimed exempt in Schedule C, included:

---

[4]       The Statement of Financial Affairs does not list any income from Aspen Place in 2010, however, Debtor subsequently produced a 2013 Year to Date Profit and Loss Statement to the Trustee, which was attached to the Trustee's Brief as Exhibit A.

2

> Two muzzle loader rifles
> .22 Marlin rifle
> .22 Ruger handgun
> Two .22 Ruger rifles
> .243 Savage rifle
> 7 mm Remington rifle
> .357 Tarus handgun
> .44 Magnum handgun
> 12 gauge Churchill shotgun
> 12 gauge shotgun - broken ejector
> 20 gauge Remington pump shotgun
> 1963 Starcraft 16 foot boat
> 1964 Motorcaft 14 foot Aluminum boat
> 1978 Wilderness Trailer—used as his home while working out of
> town
> 1997 Polaris Sportsman 400 ATV
> 2001 utility trailer
> Two horse trailers
> fishing poles

The total value listed by the Debtor for the above assets is $5,414.50.

The Debtor did not supply any documentary evidence regarding income from Aspen Place in 2010 in his Statement of Financial Affairs, but he did supply a handwritten Profit and Loss statement demonstrating that Aspen Place also lost $1,264.00 for 2010.[5]

The Debtor states in his Schedule I that he has average monthly income from Aspen Place in the sum of $232.04 a month. In Schedule J, Debtor shows that he has average monthly expenses from Aspen Place in the sum of $594.71. Consequently, his average monthly losses from Aspen Place, as reflected in his schedules, is $362.67 per month.

The Debtor asserts that the business is improving and that a profit is expected at some point in the future. The Trustee asserts that Aspen Place is merely a "hobby" and not a "gainful occupation."

---

[5]    Attached as Exhibit A to the Trustee's Brief.

Case:12-21611-SBB   Doc#:59   Filed:02/22/13   Entered:02/22/13 15:20:23   Page4 of 18

IV.   **Issues**

There are two issues before the Court:

A.   May a debtor claim assets exempt under the Tools of Trade Exemption with respect to an occupation that is not his or her principal occupation at the time of filing bankruptcy?

B.   In order to claim an exemption under the Colorado Tools of Trade Exemption, must a debtor's "gainful occupation" be "profitable?"[6]

As discussed below, the Court concludes that (a) a debtor may claim assets exempt under the Tools of Trade Exemption with respect to an occupation that is not his or her principal occupation at the time of filing bankruptcy and (b) a debtor's "gainful occupation" need not be "profitable" at the time of filing.  Because this Court can envision abuses that may arise by these conclusions, this Court sets out two non-exclusive tests herein to help determine the validity of claimed "tools of trade."  The first test looks to the validity of the claimed exemption in context of the non-principal occupation.  The second test is designed to help ascertain what may constitute "gainful occupation" so as to validate the claimed exemption.

V.   **Discussion**

A.   **Burdens of Proof**

The matter presented here largely hinges on the parties' respective burdens of proof.  Under the Bankruptcy Code, a claimed exemption is presumptively valid unless it is objected to.[7]  Once the exemption is claimed, the party objecting to a claimed exemption has the burden of proving that the exemption is not properly claimed.[8]  The burden of persuasion remains with the objecting party.[9]  However, if the objecting party can produce evidence to rebut the exemption, then the burden of production shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper, although the burden of persuasion will remain with the objecting party.[10]

---

[6]   The second issue appears to be the focus of the dispute between the Trustee and the Debtor.

[7]   HON. BARRY RUSSELL, BANKRUPTCY EVIDENCE MANUAL, § 301.57 (2012-13 ed.) (citing *In re Nicholson*, 435 B.R. 622 (9th Cir. BAP 2010).

[8]   FED. R. BANKR. P. 4003(c); *In re Larson*, 260 B.R. 174 (Bankr. D. Colo. 2001); *see also In re Coleman*, 209 B.R. 739, 741 (Bankr. D. Colo. 1997).

[9]   BANKRUPTCY EVIDENCE MANUAL, §§ 301.57

[10]   *In re Larson*, 260 B.R. 174, 186 (Bankr. D. Colo. 2001); *In re Barter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999).

In this case, the parties do *not* dispute the facts set forth above. On the face of the Debtor's Schedules and Statement of Financial Affairs, the Debtor is pursuing two occupations. His principal occupation being a Customer Relations Manager with Kroger Company and his secondary occupation being owner of a hunting and fishing guide company. The parties agree that the question is a matter of law premised on those facts. The Court, however, after having reviewed the parties' pleadings and the case authority on this subject, concludes that the Court must assess (1) the credibility of the Debtor and (2) his intentions with respect to the second occupation and (3) the history and verifiable activity of the claimed second occupation.[11] Consequently, an evidentiary hearing is necessary.

**B.      The Colorado Tools of Trade Exemption**

  1.      Statutory Language

COLO. REV. STAT. § 13-54-102(1)(I) provides that a debtor may exempt:

> The stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books, and business material of *any* debtor used or kept for the purpose of carrying on *any* gainful occupation in the aggregate value of twenty thousand dollars...[12]

The Constitution of the State of Colorado mandates that the Colorado legislature pass liberal exemption laws.[13] Consequently, exemption laws are also to be liberally construed by the courts in favor of debtors.[14] In interpreting the exemption statutes, the Court must "'ascertain and give effect to the intent of the legislature,' and that task begins with the "language of the statute itself.'"[15] When the language is clear and unambiguous, the Court need not resort to legislative history or other rules of statutory construction.[16] Moreover, the Court must not only

---

[11]      In effect, if the Court were to simply utilize the stipulated facts to determine the issues before the Court, it would be treating this matter as a summary proceeding. When the issue of credibility and intent is present, summary proceedings are inappropriate and a trial or evidentiary hearing on the merits is more proper, if not required. *Jobin v. Waukau (In re M&L Bus. Mach. Co., Inc.),* 166 B.R. 723, 724-25 (Bankr. D. Colo. 1993); *see also In re Sutherland-Minor,* 345 B.R. 348, 356 (Bankr. D.Colo. 2006).

[12]      Emphasis added.

[13]      COLO. CONST. art. XVIII, § 1 ("the general assembly shall pass liberal homestead and exemption laws")

[14]      *In re Sedillo,* 476 B.R. 619 (Bankr. D. Colo. 2012); *Dillabaugh v. Ellerton,* 259 P.3d 550 (Colo.App. 2011); *see also Sandberg v. Borstadt,* 48 Colo. 96, 99, 109 P.419, 421 (Colo. 1910).

[15]      *In re Borgman,* 698 F.3d 1255, 1260 (10th Cir. 2012) (citing *People v. Zapotocky,* 869 P.2d 1234, 1238 (Colo. 1994)).

[16]      *Dillabaugh,* 259 P.3d at 552.

look to the statute's plain language to effectuate the intent of the General Assembly, but, the Court must also consider the statutory language "considered within the context of the statute as a whole."[17]

### 2.   The Plain Meaning of the Word "Any"

The Tools of Trade Exemption specifies that the exemption is available to "**any** debtor" and "**any** gainful occupation." It is an encompassing and expansive, not limiting, term. The Court concludes that "any" is clear and unambiguous. Specifically, the term "**any**" is defined as:

| | | |
|---|---|---|
| 1: | | one or some indiscriminately of whatever kind: |
| | a: | one or another taken at random |
| | b: | EVERY–used to indicate one selected without restriction |
| 2: | | one, some, or all indiscriminately of whatever quantity: |
| | a: | one or more -used to indicate an undetermined number or amount |
| | b. | ALL–used to indicate a maximum or whole |
| 3. | a: | unmeasured or unlimited in amount, number, or extent |
| | b: | appreciably large or extended[18] |

The term "any" is not restrictive or constraining. That is, the term "*any* debtor" does not limit the Tools of Trade Exemption to only one debtor in a husband and wife.[19] Subject to the current twenty thousand dollar cap, a debtor (or debtors in the case of a husband and wife) may claim the Tools of Trade Exemption for *every* and *all legitimate* occupations held.

### 3.   The Not-So-Plain Meaning of the Terms "Gainful" and "Occupation"

Neither the Colorado Tools of Trade Exemption statute nor the Bankruptcy Code provide a definition of the term "gainful occupation." This Court determines that the statutory language is ambiguous. In those instances where a court determines that statutory language is ambiguous, courts may look to rules of statutory construction and to the legislative history as indications of

---

[17]     *Id.* (citing *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010). The Court, however, is cautioned that, "when it comes to interpreting statutes the Court itself has repeatedly instructed that pre-enactment practice is relevant only "to the interpretation of an ambiguous text" and holds no sway when statutory language is clear." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, ___ U.S. ___, 132 S.Ct. 2065, 2073, 182 L.Ed.2d 967 (2012).

[18]     MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/any (last visited Feb. 22, 2013).

[19]     *See* FED. R. BANKR. P. 1015(b). *In re Larson*, 260 B.R. 174 (Bankr. D. Colo. 2001) (noting that the Tools of Trade Exemption is a personal exemption belonging to each debtor personally); *see also Pruitt v. Wilson (In re Pruitt)*, 829 F.2d 1002, 1005 (10th Cir. 1987).

the legislature's intent.[20]  However, here, it also appears that there is virtually no legislative history with respect to the terms "gainful" and "occupation."

The court in *Sedillo* examined dictionary definitions to assess what the plain language of the statute was in interpreting "gainful occupation."[21]  In *Sedillo*, the court examined the terms "gainful," "occupation," and "gainful employment" and determined that "the plain meaning of the word 'gainful' is profitable (or at least capable of being profitable), and the plain meaning of the word 'occupation' is principal work or business."  This Court too believes that an examination of the terminology is key in ascertaining what "gainful occupation" *might* mean.

As noted by the Tenth Circuit in *In re Stephens*,[22] sometimes the ostensible "plain language" is not so plain, clear, or unambiguous.  In examining 11 U.S.C. § 1115, the Court noted that:

> Although a number of courts have held this language to be unambiguous, they have reached starkly different conclusions regarding the "plain" meaning.  The very existence of this dichotomy seems indicative of the text's ambiguity.[23]

The Court believes that, here, the situation may be similar to that noted in *Stephens*.  That is, two courts (judges) may hold two different, but plausible, and likely, equally valid interpretations of an ambiguous statute.

### 4.   Key Definitions

This Court reiterates some of the dictionary findings of Judge Romero in his *Sedillo* opinion and provides further analysis of terms relevant in addressing what constitutes a "gainful occupation."

"**Gainful**" means "productive of gain: profitable"[24]

"**Occupation**" means "[a]n activity or pursuit in which a person is engaged; esp., a

---

[20]      *In re May*, 478 B.R. 431, 439 (Bankr. D. Colo. 2012); *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996).

[21]      476 B.R. at 624-26.

[22]      ___ F.3d ___, 2013 WL 151193 (10th Cir. Jan. 15, 2013).

[23]      *Id.* at *4.

[24]      MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/gainful (last visited Feb. 22, 2013).

person's usual or principal work or business."[25]  "**Occupation**" has also been defined as: "an activity in which one engages" and/or "the principal business of one's life."[26]

"**Employment**" means "an activity in which one engages or is employed."[27]  Black's Law Dictionary elaborates on the definition noting that it is "[t]he relationship between master and servant" or "[w]ork for which one has been hired and is being paid by an employer."[28]

"**Gainful Employment**" has been defined as "[w]ork that a person can pursue and perform for money."[29]

Finally, relevant to this Court's analysis, the Court must also look to the following words.

"**Money**" means:

|   |   |   |   |
|---|---|---|---|
| 1: | | something generally accepted as a medium of exchange, a measure of value, or a means of payment: as | |
| | a : | officially coined or stamped metal currency | |
| | b : | money of account | |
| | c : | paper money | |
| 2 | a : | wealth reckoned in terms of money | |
| | b : | an amount of money | |
| | c : | plural : sums of money: funds | |
| 3: | | a form or denomination of coin or paper money[30] | |

---

[25]    BLACK'S LAW DICTIONARY 1184 (9th ed. 2009).

[26]    MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/occupation (last visited Feb. 22, 2013).

[27]    MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/employment (last visited Feb. 22, 2013).

[28]    BLACK'S LAW DICTIONARY 604.  The Court assesses that the distinction between "employment" and "occupation" is that the term "employment" reflects a situation wherein there is an "employee" and an "employer."  An "occupation" does not necessarily have to have an "employer."

[29]    BLACK'S LAW DICTIONARY 604.  It is not unimportant to note that the term "gainful employment" has origins in psychology.  *See* C.R. SNYDER & SHANE J. LOPEZ, POSITIVE PSYCHOLOGY: THE SCIENTIFIC AND PRACTICAL EXPLORATIONS OF HUMAN STRENGTHS 407-444 (2007).  In that context, "gainful employment" is defined as: "[w]ork that contributes to a healthy life by providing variety, a safe working environment, sufficient income, a sense of purpose in work done, happiness and satisfaction, engagement and involvement, a sense of performing well and meeting goals, and companionship and loyalty to coworkers, bosses, and companies."

[30]    MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/money (last visited Feb. 22, 2013).

"**Currency**" means "something (as coins, treasury notes, and banknotes) that is in circulation as a medium of exchange."[31]

"**Profit**" means:

1:   a valuable return : gain
2:   the excess of returns over expenditure in a transaction or series of transactions; especially: the excess of the selling price of goods over their cost
3:   net income usually for a given period of time
4:   the ratio of profit for a given year to the amount of capital invested or to the value of sales
5:   the compensation accruing to entrepreneurs for the assumption of risk in business enterprise as distinguished from wages or rent[32]

"**Profitable**" means "affording profits" and "yielding advantageous returns or results."[33]

"**Compensation**" means "payment" or "remuneration."[34]  Black's Law Dictionary defines the term "*compensation*" as "[r]emuneration and *other benefits* received in return for services rendered."[35]

Contrary to the ruling in *Sedillo*, this Court is not willing to limit the phrase "gainful occupation" to only "the *principal* work or business for which a person receives *compensation or profit*."[36]  The Tools of Trade Exemption statute does not limit a person to *one principal* occupation.  Moreover, modern economic realities today for many households often mandate that some persons can hold two, or more than one, occupations at a time.

In addition, "compensation" in the instance of a start-up business by an entrepreneur may

---

[31]   MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/currency (last visited Feb. 22, 2013).  As distinguished from "money," "currency" represents "money"—a medium of exchange—and it is utilized to facilitate trade.

[32]   MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/profit (last visited Feb. 22, 2013).

[33]   MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/profitable (last visited Feb. 22, 2013).

[34]   MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/remuneration (last visited Feb. 22, 2013).

[35]   BLACK'S LAW DICTIONARY 322 (emphasis added).

[36]   *Sedillo,* 476 B.R. at 627.

accrue during the initial operations where losses are common. Nevertheless, the business enterprise may be growing and result in a later payoff.

> **C.      Based on the Facts of this Case, this Debtor May Claim an Asset as Exempt as a "Tools of Trade" from an Occupation That Is Not His Principal Occupation at the Time of Filing Bankruptcy**

The Trustee contends that a recently started side-business of the Debtor should be considered a "hobby," "avocation," or a "tax loss" for the Debtor. Thus, the Trustee asserts that Debtor's ownership of and employment with Aspen Place does not constitute a "gainful occupation." The Trustee's argument is that the Court should look only to the principal occupation of the Debtor; that is, his life-long career as a Customer Relations Manager with Kroger Company. Indeed, in some jurisdictions, courts, in applying their own exemption statute—not Colorado's exemption statute—have followed the "single principal occupation rule."[37] However, other jurisdictions, recognize that, if the debtor maintains *valid multiple simultaneous occupations*, he or she may be able to claim the Tools of Trade Exemption on those *valid multiple simultaneous occupations.*[38]

The Court believes, nevertheless, that the current economic times require an acknowledgment that some people indeed have two valid and legitimate occupations. The Court further concludes that the plain language of COLO. REV. STAT. § 13-54-102(1)(I) does not limit a debtor to exempt only assets from his or her principal occupation. Specifically, "**any** debtor [may exempt tools of the trade] used or kept for the purpose of carrying on **any** gainful occupation."[39] Simply put, there is no limitation on the number of occupations a debtor may have.[40]

---

[37]      ⸱ *In re Cordova*, 394 B.R. 389 (Bankr. E.D. Va. 2008); *In re Henry*, 183 B.R. 748, 749 (Bankr. N.D. Tex. 1995); *In re Cass*, 104 B.R. 382 (Bankr. N.D. Okla. 1989); *In re Meckfessel*, 67 B.R. 277 (Bankr. D. Kan. 1986); *In re Samuel*, 36 B.R. 312, 314 (Bankr. E.D. Va. 1984).

[38]      *In re Weinbrenner*, 53 B.R. 571 (Bankr. W.D. Wis. 1985). It is noteworthy that each state independently defines what constitute a "tool of trade" and the exemption statute here is unique to Colorado.

[39]      COLO. REV. STAT. § 13-54-102(1)(i) (emphasis added).

[40]      As distinguished from *In re Cordova*, 394 B.R. 389 (Bankr. E.D. Va. 2008), the Virginia Statute, Va. Code Ann. § 34-26(7) does not utilize the word "*any*" when referring to "gainful employment." Specifically the statute provides for the following exemption:

> Tools, books, instruments, implements, equipment, and machines, including
> motor vehicles, vessels, and aircraft, which are necessary for use in the course of
> *the householder's occupation or trade* not exceeding $10,000 in value, except
> that a perfected security interest on such personal property shall have priority
> over the claim of exemption under this section. A motor vehicle, vessel or
> aircraft used to commute to and from a place of occupation or trade and not
> otherwise necessary for use in the course of such occupation or trade shall not be

(continued...)

10

While this Court concludes that a debtor *may* claim as exempt "tools of trade" from more than one different occupation, this Court concludes that such a determination is not *carte blanche* to debtors to manufacture occupations in anticipation of bankruptcy, or during the course of a bankruptcy, so as to exempt most anything as a "tool of trade." Specifically, if a debtor claims an exemption in "tools of trade" for an occupation—which occupation is not the debtor's principal occupation or employment —then the Court must look to the following questions:

(1)     What is the length of time the alleged non-principal occupation has been undertaken and what is the debtor's intensity and extent of commitment to the non-principal occupation for which the exemption is claimed?

(2)     Is the asserted non-principal occupation profitable or at least capable of being profitable in the foreseeable future?

(3)     Is the asserted non-principal occupation more than a mere hobby or pastime?

(4)     Are the "tools of the trade" claimed as exempt essential to the alleged non-principal occupation and customary to the non-principal occupation?

(5)     Does the evidence support that there is indeed a valid non-principal occupation being pursued by the debtor?

---

[40](...continued)
        exempt under this subsection. "Occupation," as used in this subdivision, includes
        enrollment in any public or private elementary, secondary, or vocational school
        or institution of higher education.

The Virginia statute is not as expansive as the Colorado statute here. Moreover, a long standing holding in Virginia, *In re Samuel*, 36 B.R. 312 (Bankr. E.D. Va. 1984), set up the standard for a "single principal occupation rule."

It is important to note that the Colorado legislature has limited an exemption to a "principal occupation"—rather than "any" occupation—in the context of debtors engaged in agriculture. COLO. REV. STAT. § 13-54-102(g)(I) limits exemptions in the context of agricultural occupations to "agriculture as the debtor's *principal* occupation." (emphasis added). Specifically, COLO. REV. STAT. § 13-54-102(g) provides:

        Except as otherwise provided in subparagraph (II) of this paragraph (g), in the
        case of every debtor engaged in *agriculture as the debtor's principal*
        *occupation*, including but not limited to farming, ranching, dairy production, and
        the raising of livestock or poultry, all livestock, poultry, or other animals and all
        tractors, farm implements, trucks used in agricultural operations, harvesting
        equipment, seed, and agricultural machinery and tools in the aggregate of fifty
        thousand dollars.

Emphasis added.

(6)     Is the debtor credible and is debtor's testimony consistent with an intention of pursuing a valid non-principal occupation?

In this case, the stipulated facts indicate the Debtor started this business in late-2009 and he filed bankruptcy on June 1, 2012. The non-principal occupation had been in existence for less than two years at the time of filing. Nevertheless, it appears that the Debtor considers this a genuine non-principal occupation and this is not refuted by the Trustee by countervailing evidence.

The non-principal occupation has lost money through the date of the filing of the bankruptcy case. Nevertheless, the losses are diminishing, it would appear, based on the Statement of Financial Affairs and Schedules I and J.

The "tools of the trade" claimed exempt are customary to and consistent with a hunting and fishing guide business.

The uncontested facts thus far reflect that this is a valid non-principal occupation being pursued by the Debtor.

Based on the facts of this case and the non-exclusive factors set out by the Court, the Court concludes that this Debtor may exempt "tools of the trade" from a non-principal occupation. Nevertheless, the inquiry does not stop here as the principal question before the Court is whether the non-principal occupation *must* be profitable to be considered a "gainful occupation."

**D.     In Order to Claim an Exemption under the Colorado Tools of Trade Exemption, the Debtor's "Gainful Occupation" Need Not Equal "Profitable Occupation?"**

1.     Distinguishing *Sedillo*

The principal contention of the Trustee is that "gainful occupation" must be equal to or synonymous with "profitable occupation." Notwithstanding the Trustee's assertion that the ruling in *Sedillo* concluded that "gainful occupation" *is* synonymous with "profitable occupation," the Court, having read that decision, does not conclude that Judge Romero made such a narrow and specific determination. Specifically, Judge Romero stated:

> In order to effectuate the intent of the General Assembly within the context of the statute's plain language, the Court determines the phrase "gainful occupation" means the principal work or business for which a person receives compensation or profit, not

reimbursement.[41]

First, the facts of *Sedillo* are quite different from those presented in this case.  In *Sedillo*, the debtor offered to be a foster parent and she used a motor vehicle to transport foster children to necessary everyday events.[42]  Debtor was permitted certain *reimbursements* for her foster parenting, however, she was not *compensated* for her role.[43]  Debtor, here, is actually *compensated* for his guiding services.

Second, Judge Romero's *Sedillo* decision was a nuanced decision in that he carefully chose his words so as to note that there may be situations where a business may *not* be profitable, but the business is *intended* to be profitable.  Specifically, he stated:

> Based on the foregoing definitions from multiple authorities, and in the context of COLO. REV. STAT. § 13-54-102(1)(I), the Court determines the plain meaning of the word "gainful" is profitable (*or at least capable of being profitable*), and the plain meaning of the word "occupation" is principal work or business.[44]

This case differs from *Sedillo* in that the Debtor, here, seems to manifest an intention of actually attempting to get his guide service up and running and profitable.  The margins of loss from the documents filed with this Court reflect that, while the business is not making a profit, the losses appear to be decreasing.  The *Sedillo* case involved a vehicle, wherein the expenses for traveling were *reimbursed*.  There was never any intention of trying to run a business, profitable or otherwise.

---

[41]     *Sedillo*, 476 B.R. at 627.

[42]     *Id.*

[43]     *Id.*

[44]     *Id.* at 625 (emphasis added).

13

2.    The Slippery Slope

This Court believes that a "for profit"[45] business or occupation may also not be a threshold requirement to be exempt for a "gainful occupation." In examining this question, the Court notes that the term "gainful *employment*" actually has its origins in positive psychology wherein the determinants for the quality of life are assessed.[46]  "Gainful *employment*" refers to the benefits of work and employment as an indicator of health, living a fulfilled life, social identity, and purpose.[47]

By way of example, a person who is employed by a charity or other nonprofit business (a 501(c)(3) corporation), would seem to be excluded from being able to take the exemption under COLO. REV. STAT. § 13-54-102(1)(I) under the *Sedillo* analysis.  Consequently, a person who utilizes a specially outfitted van for the operation of a senior citizen transportation service may not be able to take the exemption if the business itself has to be "for profit."

Another example is the entrepreneur who may be developing software such as a free software application ("App") that is being created *not* to produce "profit" in terms of accumulated and immediate "currency," but, instead to produce "profit" in the sense of a

---

[45]      Or, a business that is "capable of being profitable."

[46]      *See* Amy Wrzesniewksi, Clark McCauley, Paul Rozin & Barry Schwartz, *Jobs, Careers, and Callings: People's Relations to their Work* 31, JOURNAL OF RESEARCH IN PERSONALITY, 21-33 (1977).

[47]      *See* BLACK'S LAW DICTIONARY 604, *supra*, n. 28; *See also id.*  In this work, the authors noted that there were three distinct relations people can have to their work or occupations: "Jobs," "Careers," and "Callings."

> The distinctions, drawn starkly, are these: People who have Jobs are only interested in the material benefits from work and do not seek or receive any other type of reward form it.  The work is not an end to itself, but instead is a means that allows individuals to acquired the resource needed to enjoy their time away from the Job.  The major interest and ambitions of Job holders are not express through their work.  In contrast, people who have Careers have a deeper personal investment in their work and mark their achievements not only through monetary gain, but through advancement within the occupational structure.  This advancement often brings higher social standing, increased power within the scope of one's occupation, and higher self-esteem for the worker.  Finally, people with Callings find that their work is inseparable from their life.  A person with a Calling works not for financial gain or Career advancement, but instead for the fulfillment that doing the work brings to the individual.

A fair analysis of these distinctions would reflect that if a person has a "Job" the person is in a "gainful occupation" *only* if that person receives "compensation" or "profit."  This interpretation is consistent with the *Sedillo* ruling.  476 B.R. at 627.  However, if a person has a "Career," "compensation" or "profit" may not be directly implicated, but instead the investment over time in the work constitutes the "gainful occupation."  Finally, for those who have a "Calling," arguably, the person may have a "gainful occupation" and the recompense may be derived from the fulfilling of a life-purpose.

14

valuable exchange of ideas and potential future wealth.[48]

But, this Court can see that an unfettered opening of the door to debtors to take a Tool of Trade Exemption for a secondary "gainful occupation," is equally fraught with potential mischief or abuse. Indeed, potentially significant problems *may* exist in permitting a debtor to claim exempt various "tools of trade" in so-called secondary occupations. That is, in allowing the opening suggested here by the Debtor, it may open the door to mischievous or dishonest and manipulative debtors who could falsely claim a second occupation and make bogus claims for "tools of trade."[49]

The slope is steep either in the direction of having a very narrow interpretation or a very loose interpretation of what "gainful occupation" means. To assist in assessing the validity of a "gainful occupation" in the context of a claimed exemption for "tools of trade," this Court believes the following factors should be considered:

(1)     What is the debtor's occupation in which he or she intends to exempt assets as "tools of trade?"

(2)     How long has the debtor been involved in the occupation?

(3)     Is there evidence of "actual use" of the "tools of trade" by the debtor for his or her occupation?

(4)     Are the "tools of trade" consistent with the occupation?"

(5)     Is a "fresh start" attainable without the "tools of trade?"[50]

The Debtor's second occupation likely fits into the category of a career or calling (*see infra* note 45) as opposed to a job. The payoff is not immediate as he needs to build a book of business over time. The Court must ascertain the Debtor's intentions with respect to the business, not by a statement of facts, but by actual testimony.

---

[48]        *See, e.g.*, David Streitfeld, *As Boom Lures App Creators, Tough Part is Making a Living*, N.Y. TIMES, November 17, 2012. By way of example, Facebook and Twitter likely would not meet the criteria suggested by the Trustee here a year or so into their existence. Through the exchange of information, they have become very valuable over time.

[49]        By way of example, this Court could envision a person who does photography on the side and who sets up an LLC to take family portraits improperly claiming the Tools of Trade Exemption for photographic equipment. A "ski-bum" could claim that he is a part-time ski instructor and falsely claim his equipment as exempt. A person who caters for fun might falsely create a business so as to exempt kitchen wares. A myriad of other fraudulent claims of exemption can be foreseen by this Court.

[50]        The Court notes that the test it enunciated in *In re Sackett*, 394 B.R. 544 (Bankr. D. Colo. 2008), was specific to the context of a motor vehicle. The test herein enunciated is non-exclusive and pertains to "tools of trade" claimed generally.

The Debtor has been involved in the occupation for over three years and it appears that he is increasing his involvement in the guide service.  The Debtor should provide this Court with his intentions going forward with his business into the future.  The Court must consider testimony and evidence as to the Debtor's intentions with respect to his business.

The Trustee has not demonstrated that the Debtor does not actually use the items sought to be exempted.  Notwithstanding, the Debtor has also not explained fully his actual and anticipated use of the items sought to be exempt.[51]

In this case, the Debtor's second occupation is a fishing and hunting guide service.  All of the items sought to be exempted are consistent with the guide business.  Nevertheless, the Court needs further testimony with respect to the guide business to ascertain whether Debtor is actually using the items claimed exempt in his employment with Aspen Place.

### E.  Ownership of the Assets Claimed Exempt

The Court is aware of at least two opinions from this District wherein a debtor's claimed exemption was questioned when a business entity owned the asset, but where the debtor "used or kept" the asset and vice versa.[52]  Here, this Court must conduct an evidentiary hearing to

---

[51]   By way of example, this Court cannot readily conceive of a reason why a Debtor would utilize a 12 gauge shotgun with a broken ejector for the business.

[52]   Judge A. Bruce Campbell addressed this question in a case where the Debtors owned the asset claimed, but a corporation used the asset for its business success.  *In re Miller*, No. 10-413408, 2011 WL 4018267 (Bankr. D. Colo. Sept. 8, 2011).  The court held that with respect to a domain name,

> ... the threshold question is whether the Debtors can claim an exemption in property which they own, but which has been "kept and used" not by them, but by a separate legal entity, a corporation, albeit one owned solely by them.

> This Court answers that question in the negative.  Whatever the nature of Debtors' interest in the domain name, that domain name provides access to a website which Debtors have acknowledged is critical to **the corporation's business**.  While the Debtors may have been the sole shareholders of that corporation prior to filing their Chapter 7 case, upon the filing of the petition, those shares, along with the domain name, became property of the estate.  A domain name "used and kept" as "an integral part" of the corporation's business cannot now be exempted, at the expense of the creditors of this bankruptcy estate, for the benefit of debtors who did not use it themselves.  Debtors cannot ignore the corporate entity which they created to conduct business when it is convenient to do so.

Id. at *2 (emphasis in the original).

Judge Elizabeth E. Brown, Bankruptcy Judge for the District of Colorado, addressed another situation wherein the

(continued...)

16

ascertain who or what owns and "uses" and "keeps" the claimed assets.

## VI.    Conclusion and Order

The Court concludes that the Debtor, in this case, *may* pursue a valid second occupation. But, in making a final determination thereby, this Court *must* conduct an evidentiary hearing to address the factors stated above.

Moreover, this Court concludes that an occupation need not be profitable at the time of filing. However, the non-principal occupation may not be merely a hobby or pastime and it must meet the factors set forth herein with respect to what constitutes a valid non-principal occupation. The Court *must* conduct an evidentiary hearing to address the factors stated above.

Finally, this Court must consider evidence with respect to the actual ownership of the assets claimed exempt. The Court does not presently have before it sufficient evidence to make a finding that either the Debtor or Aspen Place is the owner of the assets.

IT IS THEREFORE ORDERED that, based on the above and foregoing, this Court must conduct an evidentiary hearing. A final evidentiary hearing regarding the Objection to Exemptions filed by Douglas E. Larson, Chapter 7 Trustee on August 20, 2012 and the Response thereto filed by Melvin Eugene Sharp, *pro se*, on September 7, 2012, is hereby scheduled upon a three-day trailing docket, commencing at **9:00 a.m. on Wednesday, May 1, 2, and 3, 2013, in Courtroom 323, U.S. Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501**. The Court will attempt to establish a firm setting time for this evidentiary hearing during the three-day period and will advise counsel for the parties/parties appearing *pro se* regarding same. The parties, however, shall remain available during the entire three-day period unless notified by the Court.

IT IS FURTHER ORDERED that any party intending to introduce any exhibits or call

---

[52](...continued)
business owned the tools, but a debtor "used and kept" the tools. *In re Prowant,* No. 09-26845-EEB (Bankr. D. Colo. filed Sept. 16, 2010). In the *Prowant* decision, Judge Brown noted:

Beginning with the language of the statute itself, the Court notes that it is limited in its application to tools that are "used and kept" to carry on "any gainful occupation." In this case, the Debtor is the sole owner and President of PLC. For purposes of determining the exemption, the Debtor and PLC are one and the same because any profits that are realized from PLC's business will flow to the Debtor. And nothing in the statute limited its application to a sole proprietorship. In fact, nothing in the language of the statute limits its application to businesses in which the debtor holds an equity interest. Thus, a tradesman who is required to use his own tools may exempt them even if he works for a company in which he holds no ownership interest.

*Prowant,* No. 09-26845, at 3.

any witnesses at the scheduled hearing shall fully comply with Local Bankruptcy Rule 9070-1, **except** that the deadline for filing exhibit and witness lists is hereby established as **Thursday, April 25, 2013**. If a party fails to comply with L.B.R. 9070-1 as modified herein, the Court may deny admission of the party's exhibits and/or the testimony of the party's witnesses.

Dated this 22nd day of February, 2013.

BY THE COURT:

_Sid Brooks_

Sidney B. Brooks,
United States Bankruptcy Judge

18